UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

JEAN BERKO GLEASON
     Plaintiff,

                                    Case Number:

      v.

LAUREN GAWNE and
GRETCHEN MCCULLOCH,
dba LINGTHUSIASM,

           Defendants.

---

**VERIFIED COMPLAINT, REQUEST FOR INJUNCTIVE
<u>RELIEF AND JURY DEMAND</u>**

<u>**Introductory Statement**</u>

1.    Jean Berko Gleason, PhD.  ("**Berko Gleason**"), the plaintiff, is one of the world's leading experts on the acquisition and learning of language by children. She is recognized internationally as the creator of an investigational tool in the study of linguistics popularly known as "The Wug Test," a series of flash cards with hand-drawn color images, Arguably, the most famous element of The Wug Test is Berko Gleason's drawing of a bird-like creature known as "The Wug," together with a phrase from the experimental test: "This is a Wug." Berko Gleason owns a U.S. copyright registration for the work (the collection of flash cards) known as The Wug Test. She is also the owner of federal trademark registrations on the principal and supplemental registers of the United States Patent and Trademark Office ("**USPTO")**, and, as of the date of the filing of the

with Verified Complaint,  is also an applicant for additional USPTO registrations on the principal register all of which incorporate either the "Wug" logo and/or the phrase "This is a Wug" or a combination or variation thereof. Berko Gleason and the Wug have been featured in numerous articles, television programs and Internet videos for decades, and excerpts of her work have been published or cited by third parties in multiple academic journals and books as well as publications intended for both limited and  general audiences. Since in or about 2006, Berko Gleason has also sold or licensed the third party sales of products (such as coffee mugs and t-shirts) affixed with variations of the Wug images, sometimes accompanied by the phrase: "This is a Wug. Now there is another one. There are two of them. There are two _____" or parts thereof. Additionally, for many years prior to her commercial exploitation of the Wug, Berko Gleason caused to be produced t-shirts and other items emblazoned with Wug imagery to give as gifts to friends, relatives and colleagues.  For decades, Berko Gleason has granted permission to linguistic associations and clubs at universities and colleges around the world for the royalty-free use of the Wug logo as a mascot. For most of her adult life, Berko Gleason has been associated with The Wug Test, the Wug character together with the accompanying phrase quoted above, and her original doctoral thesis entitled "The Child's Learning of English Morphology." Her name is so synonymous with the Wug Test, its famous phrases, and its imagery such that her common law and federally registered trademarks have acquired distinctiveness and secondary meaning. Despite this, the popularity of the Wug has inspired many imitators and infringers, such as the defendants herein, to appropriate Berko Gleason's intellectual property for profit or other benefit. Unlike other infringers of Berko Gleason's work and creations, however, the Defendants

herein, despite multiple demands, have failed and refused to cease from their infringing activity, have publicized it on social media, and have actively encouraged others to engage in the same or similar activity based on the defendants' unsubstantiated and unsupported belief that Berko Gleason's work is in the public domain, and that her trademarks are unenforceable.  Berko Gleason brings this action against the Defendants for willful infringement of Berko Gleason's registered copyright in the Wug Test, which incorporates the Wug image and the accompanying phrase quoted above, in violation of the Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "**Copyright Act**"). Berko Gleason also asserts claims against the Defendants for willful infringement of Berko Gleason's registered trademarks under section 32(1) of the United States Trademark (Lanham) Act of 1946, as amended (the "**Lanham Act**"), 15 U.S.C. § 1114(1); common law trademark infringement, unfair competition, and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and related claims under Massachusetts statutory and common law. Berko Gleason seeks to recover either statutory or actual damages arising from the Defendants' willful infringement, plus recovery of punitive damages, reasonable attorney's fees, and costs, as allowed by the applicable statutes, together with a preliminary injunction as well as a permanent injunction to enjoin and prevent the Defendants from further unlawful copying, infringement, and injury to Berko Gleason.

### Parties

2.   The Plaintiff, Dr. Jean Berko Gleason, is an individual residing at 110 Larchwood Drive Cambridge, Massachusetts 02138.

3.      Upon information and belief, the Defendant, Lauren Gawne, is an individual residing in Montreal, Canada.

4.      Upon information and belief, the Defendant, Gretchen McCulloch, is an individual residing in Melbourne, Australia.

5.      Hereinafter, the Defendants are referred to collectively as "**Lingthusiasm.**"

## Jurisdiction and Venue

6.      This action arises, under the United States Copyright Act, 17 U.S.C. § 101 *et seq,* as amended, the Lanham Act, 15 U.S.C.§1121, and Massachusetts state law.

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over the Defendants because the Defendants intentionally or negligently caused harm to Berko Gleason in this District. The Defendants, doing business as Lingthusiasm, do substantial business in the United States and in this District through the Defendants' website Lingthusiam.com.

9.      The Defendants' infringing products are, or have been, available for sale in this District through such platforms as Redbubble.com and Lingthusiam.com.

10.     The Defendants also do business in this District by making available Lingthusiasm podcasts on Lingthusiam.com and Youtube.com.

11.     Venue for this action is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to Berko Gleason's claims have occurred in this District.

12.     Venue is also proper because Berko Gleason resides in this District and both of the Defendants reside, upon information and belief, outside of the United States.

## Factual Allegations

13.   Berko Gleason is known internationally as the creator of the  'Wug' character and the
      'Wug' Test which demonstrates that very young children, without formal instruction,
      acquire an understanding of the rules of English grammar and language, such as
      normative plural and verb forms, even when presented with fanciful, nonsense words.

14.   Berko Gleason has made significant contributions to the understanding of children's
      language acquisition skills, aphasia, and interaction between parents and children.

15.   She is the author of over 125 published works on language development in children.

16.   Berko Gleason earned a B.A. in history and literature from Radcliffe College.
      Subsequently, she pursued an M.A. in linguistics, and a combined Ph.D. in linguistics
      and psychology at Harvard university. From 1958-1959 she was a postdoctoral fellow at
      MIT.

17.   She has been a visiting scholar at Harvard University, Stanford University, and at the
      Linguistics Institute of the Hungarian Academy of Sciences.

18.   She is a Professor Emerita in the Department of Psychological and Brain Sciences at
      Boston University.

## Berko Gleason's Registered Copyright

19.   To fix her experiment in a tangible medium, Berko Gleason subsequently created a series
      of 27 cards, each with hand-drawn color pictures of imaginary characters or of people
      performing made-up actions annotated with short propositions and questions designed to
      test a young child's application of the rules of English grammar when confronted with
      nonsense words embedded in short English sentences. These images and text came to be
      known as "The Wug Test."

5

20.     The Wug Test is named for one of the characters that appears therein – a Wug, a line drawing of a bird-like creature.

21.     Three Wug characters appear on Card 1 of the Wug Test over the text:  "This is a WUG. Now there is another one.  There are two of them.  There are two _____."   A true and accurate copy of Card 1 from the Wug Test is reproduced below as Figure 1.



22.     Two Wug characters, different in appearance from the ones appearing on Card 1, appear on Card 6 of the Wug Test over the text: "This is a tiny WUG….This is a very tiny WUG. What would you call a very tiny WUG? This WUG lives in a house.  What would you call a house that a WUG lives in?"  A true and accurate copy of Card 6 from the Wug Test is reproduced below as Figure 2.



(Figure 2)

23.    The Wug character, together with the accompanying phrase, "This is a Wug. Now there

is another one. There are two of them. There are two ____." Has, over time, come to be

regarded as the most iconic part, i.e., the "heart"—of the work "The Wug Test."

24.    The Wug Test, incorporating all 27 color cards, was published for the first time on March

28, 2003, by the Child Language Data Exchange System, with Berko Gleason's

authorization, with the restriction that, among others, said publication was for research

purposes, only, and not for commercial use.

25.   Berko Gleason obtained a copyright registration for The Wug Test on September 15, 2006. A true and accurate copy of the certificate of registration is attached hereto and incorporated herein by reference as **Schedule 1**.

26.   The Wug Test was registered with the United States Copyright Office prior to any alleged act of infringement by Lingthusiasm.

27.   Berko Gleason's copyrighted work "The Wug Test" is a creative and expressive work intended for public dissemination.

28.   In 2019, Berko Gleason, through Larchwood Press, published *The Wug Test* as a children's book in spiral-bound book form and made it available for sale at Amazon.com, among other sites.  True and accurate copies of images from the 2019 book *The Wug Test* are attached hereto and incorporated herein by reference as **Exhibit A.**

29.   As set forth in the copyright page of the 2019 book, "*The Wug Test*, including all images and text, was copyrighted by Jean Berko Gleason in 2006."

30.   Berko Gleason is not only the sole creator and owner of the Wug Test, as a living author, pursuant to 17 U.S.C. §302, copyright protection in her work exists for the term of her natural life plus 70 years.

### Berko Gleason's Registered and Common Law Trademarks

### Berko Gleason Owns Several Trademark Registrations and/or Pending Trademark Applications for her Wug Character and Associated Phrase.

31.   Berko Gleason owns the trademarks for "This is a Wug," "Wug Life," and the "Wug" Logo (collectively, the "**Wug Trademarks**"), which marks are used in interstate commerce in connection with a number of products including, but not limited to, mugs, t-shirts, children's clothing, and greeting cards.

32.    Berko Gleason is also a registrant on the United States Patent and Trademark Office

("USPTO") principal register for "Wug Life," a registrant on the USPTO supplemental

register for "This is a Wug" and an applicant on the USPTO principal register for "This is

a Wug" and the "Wug" logo.

33.    The below table sets forth the status of Berko Gleason's Trademark applications and

registrations as of the date of the within Verified Complaint:

| S.No. | Mark | Registration/ Application No. | Date of Registration/ Application | Register |
|---|---|---|---|---|
| 1. | WUG LIFE (International Classes 21 and 25) | Reg. No. 6120251 | August 4, 2020 | Principal |
| 2. |  THIS IS A WUG (International Classes 16, 21 and 25) | Serial No. 90078560 | July 28, 2020 | Principal |
| 3. |  | Serial No. 90040618 | July 7, 2020 | Principal |

| | | | | |
|---|---|---|---|---|
| | (International Classes 14, 16, 21 and 25) | | | |
| 4. |  THIS IS A WUG (International Classes 21 and 25) | Reg. No. 4251794 | November 27, 2012 | Supplemental |

**Berko Gleason Has Established Common Law Rights including Acquired Distinctiveness and Secondary Meaning in her Wug Character and Associated Phrase through Decades of <u>Use of the Mark</u>.**

34. Since at least as early as November 6, 2006, Berko Gleason has used the Wug Trademarks in interstate commerce.

35. Since the early 1990s, Berko Gleason has commissioned the manufacture and distribution of specialty products, especially t-shirts and mugs bearing her Wug logo, to be given as gifts.

36. Since the late 1990s, Berko Gleason has licensed the use of, or otherwise granted permission for, the royalty-free use of the Wug image to numerous linguistic clubs and societies around the world.

37. In 1998 on the 40th anniversary of the creation of the WUG, a group of psycholinguists celebrated Berko Gleason's work with a festschrift and conference. A large collection of "This is a Wug" t-shirts was created, and the Dr. Berko Gleason distributed them at a party during the conference. Copies of photographs from the above-referenced party is reproduced below as Figure 3.

10

 

38.  From time to time thereafter, Berko Gleason distributed Wug T-shirts as gifts to friends and colleagues.

39.  In or about 2005 several dozen other WUG shirts were distributed at Berko Gleason's retirement party at Boston University.

40.  In November 2006, in collaboration with one of her daughters, Berko Gleason created the Wug Store on the Internet site Café Press for the purpose of retailing WUG-related merchandise.

41.  Following the creation of The Wug Store at Café Press, Berko Gleason began authorizing the sale of WUG-related merchandise at other Internet sites such as Red Bubble and Zazzle.

42.  Since 2006, Berko Gleason has authorized the sale of products bearing the WUG image at her own website: wugstore.com, as well as at third party websites such as Redbubble.com, Pixels.com, cafepress.com, Amazon.com.

43.  Periodically, Berko Gleason has authorized the production of larger batches of WUG mugs printed by Discount Mugs or Vista Print to give to Berko Gleason's friends or to give to Boston University so that students can sell them and keep the profits for their programs.

11

44.     In 2014, Berko Gleason licensed the commercial use of WUG imagery, WUG dolls and

         other products to the Event Network which  represents a consortium of children's and

         science museums located throughout the United States.

45.     In connection with the promotion of the PBS NOVA show "The Secret Life of

         Scientists," which featured her, Berko Gleason posed for a photo of herself and a giant

         cutout figure of a WUG, which she also uses as an email insignia, among other things.  A

         copy of the image is reproduced below as Fig. 3.



(Figure 3)

True and accurate copies of the photographs from the 2015 PBS Series "The Secret Lives

of Scientists," are attached hereto and incorporated herein by reference as **Exhibit B**.

46.     As a result of Berko Gleason's extensive use, licensing, advertisement, promotion, and

         marketing for approximately two decades, the WUG trademarks are well-known and

         have acquired distinctiveness, secondary meaning, and have also generated valuable

         goodwill.

47.   Multiple online searches of the name "Jean Berko Gleason" return extensive data,

spanning over six pages, referencing her publications and contributions in the linguistic

field.

48.   Specifically, Berko Gleason's work is extensively cited in professional literature and has

received tremendous media coverage.

49.   As demonstrated by the examples attached hereto and incorporated herein by reference as

**Exhibit C**, the Wug Trademarks and the Wug Test have received significant media

coverage, and the character of the Wug is widely associated in the minds of the public

with its creator, Berko Gleason.

50.   Berko Gleason also diligently protects and attempts to enforce her intellectual property

rights.

51.   In the 14-month period preceding the date of the within Verified Complaint, Berko

Gleason has transmitted or caused to be transmitted to various Internet platforms

numerous DMCA Copyright takedown notices.

52.   Berko Gleason has exclusive rights to the use and enforcement of the WUG trademarks

under statute and/or pursuant to federal and state common law.

**Lingthusiasm Has Willfully Infringed Berko Gleason's Copyrights and Trademarks.**

53.   On March 26, 2020, the Defendants contacted Berko Gleason to discuss "paid licensing

of merch [*sic*] designs based on the wug."

54.   While the parties engaged in some correspondence regarding the possibility of a license

or other arrangement for Lingthusiasm's use of WUG marks, they did not reach an

agreement, and at no time did Berko Gleason authorize or consent to the use of her

trademarks and copyrighted material. A true and accurate copy of the correspondence between the parties is attached hereto and incorporated herein by reference as **Exhibit D**.

55.   When she first learned about Lingthuisiasm, Berko Gleason was under the impression that the Defendants' interest in the WUG was from the perspective of scholarship and commentary, which she generally supports, and has supported extensively.

56.   For example, since 2010, Berko Gleason has maintained a charitable gift fund known as the Wug Foundation managed by Fidelity Investments, to which she has given many thousands of dollars beyond any proceeds earned from Wug sales.  Some of those grants have gone to more general educational causes, especially the American Indian College Fund, and some have gone to specific linguistic causes, e.g., The Endangered Languages Fund.

57.   However, in or about late March 2020, Berko Gleason discovered that Lingthusiasm was actively promoting or selling products bearing the WUG logo, even though the parties had never agreed on terms for such use.

58.   Upon information and belief, the WUG image that Lingthusiasm has used to offer WUG merchandise for sale appears to be a tracing of the WUG images on goods sold on the Café Press and Red Bubble stores maintained by Berko Gleason.

59.   When the Lingthusiasm copy of the WUG image is downloaded and superimposed on Berko Gleason's Café Press WUG, it is evident that the two images are exactly the same size and the lines in the Lingthusiasm version follow the lines in Berko Gleason's Café Press version precisely.

60.   Upon further information and belief, Lingthusiasm likely traced, or caused to be traced, Berko Gleason's Café Press WUG image using the software programs Illustrator or

Photoshop using the pen tool in those programs, and then uploaded the copied image at exactly the same size as the original.

61.   On April 1, 2020, Berko Gleason, through counsel, served upon Lingthusiasm a cease and desist identifying and complaining about Lingthusiasm's unauthorized use of Berko Gleason's trademarks and copyrights an example of which appears in Figure 4, below.



62.   By letter dated April 10, 2020, the defendants, through counsel, responded to Berko Gleason's April 1, 2020 Cease and Desist Letter, pursuant to which Lingthusiasm denied that Berko Gleason enjoyed exclusive rights in her trademarks and copyright, and asserting that the trademarks were unenforceable and the copyright registration invalid.

63.   By letter to Lingthusiasm's counsel dated July 24, 2020, Berko Gleason through counsel, responded to Lingthusiasm's counsel reasserting Berko Gleason's exclusive rights in her trademarks and copyright.

64.   By letter dated July 29, 2020, Lingthusiasm, through counsel reasserted its original position. True and accurate copies of the above-referenced correspondence are attached hereto and incorporated herein by reference as **Exhibit E**.

65.     Following the above-referenced exchange of correspondence, Lingthusiasm began to actively market and sell merchandise bearing the WUG mark and the heart of The Wug Test *i.e.* the Wug character on third party websites.

66.     Lingthusiasm has also published a statement on its own website asserting, without citation to legal authority, that the WUG is in the public domain.

67.     There has not been a ruling from any federal or state court or from the U.S. Copyright Office that the WUG is in the public domain.

68.     There has not been a ruling from any federal or state court or from the U.S. Patent and Trademark Office that any of Berko Gleason's WUG registered trademarks – either on the principal or supplemental register – or that her common law marks are "unenforceable."

69.     Lingthusiasm's position regarding Berko Gleason's intellectual property appears to be based entirely on the opinion of its counsel.

70.     Despite repeated demands and requests, Lingthusiasm continues  to use, without Berko Gleason's consent or permission, Berko Gleason's copyrighted material and trademarks. For example:



True and accurate copies of screenshots from Defendants' website lingthusiam.com/wug advertising and selling "Merch with wugs" are attached hereto and incorporated herein by reference as **Exhibit F**.

71.   As is evident from Exhibit F, a significant portion of the merchandise that Lingthusiasm has sold on its and third party sites, such as shirts and mugs, is of the same or similar type that Berko Gleason sells or licenses.

72.   The Defendants have not merely sold products bearing or incorporating Berko Gleason's registered copyright and registered and common law trademarks, they have actively encouraged others to do so as set forth below:

> Is the wug copyrighted?
> As far as we can confirm, the original 1958 wug was not copyrighted; if it was originally registered, it was not renewed so it passed into the public domain by the mid-1980s in line with US copyright laws. In the 1950s, copyright protection did not manifest when a work was created and fixed, as it does now. Copyright for works created between 1923 and 1977 lasted for 28 years if there was no copyright notice on it, and copyright for works created between 1923 and 1963 that had a copyright notice lasted 28 years, although it could be renewed by the original copyright holder. Our lawyer, Heidi Tandy, has not been able to find evidence that such a renewal was ever filed; in April 2020, we asked Jean Berko Gleason's team for documents showing any copyright registration or renewal of her 1958 work, and they have not provided anything to us. If anyone has evidence that the copyright for the original wug was ever issued and/or renewed, please send it to htandy@bergersingerman.com and we will update this page.
> The images in the WUG Test book were registered with the US Copyright Office in 2006, so they remain protected by copyright, meaning that there are certain contexts in which you can't reproduce the images from that book directly; however, you can purchase items with that copyrighted 2006 image from The Original WUG Store, which is operated by Jean Berko Gleason. **For clarity's sake, despite fair use as described below, it may be safest to create your own wug images rather than use the 2006 wug image.**
> Regardless of the copyright status of the original 1958 or classic 2006 wug images, drawing your own wug image or creating a replica of the concept of the 1958  wug in another format (such as on a cake or a tattoo) is permitted by US copyright law. The doctrine of Fair Use in the United

States allows others to create transformative works that include WUGs, such as fanart, fanfiction, baked goods and more. In some circumstances, transformative works can be sold; you can learn more about fair use and transformative works from the Hugo-award winning Organization for Transformative Works. Also, please let us know if you write any wug fanfic, we would love to read it.

We have been fortunate to be able to pay for the legal advice of Heidi Tandy, of Berger Singerman, in clarifying the copyright status of the wug. **If you've run into any issues with takedown notices over your use of the wug you can get in touch with us and we can share what we've learned in more detail (although we cannot offer legal advice).**

**Is the wug trademarked?**

Jean Berko Gleason has a federal trademark registration for the phrase WUG LIFE without a design. She provided Feb 1 2020 as the date of first use for WUG LIFE, but because she filed it on July 3, 2019, the July date is her national priority date.

Jean Berko Gleason also has a registration on the Supplemental Register for the phrase THIS IS A WUG & Design, but a Supplemental Registration does not prove  proprietary rights in the mark at issue. Her claimed date of first use for the Supplemental Registration for THIS IS A WUG & Design is Jan 10, 2006, but the application wasn't filed until Dec. 30, 2011, and **since it's supplemental, it isn't evidence of priority.**

Copyright refers to the exclusive right to make copies of a creative work, usually for a limited time; trademark refers to a recognizable sign, design, or expression which identifies products or services of a particular source from those of others. The US Trademark Office explains the differences between the two. In this situation, the 2019 trademark registration restricts other people from claiming to be a business called WUG LIFE which sells products such as mugs and shirts, or selling WUG LIFE-branded products. The 2011 trademark registration shows that Jean Berko Gleason sells products that have the words THIS IS A WUG with a design, but doesn't restrict others because her use of that phrase and image was seen by the Trademark Office ornamental or decorative, and agreed to their conclusion. A Supplemental Registration is not proof of proprietary rights or priority.

Use of either phrase in other contexts, such as memes, tattoos, and other items not for sale is no longer a trademark issue, it's a copyright one, for which see "public domain" and "fair use" above. Neither of her trademarks restrict people from using the image of the wug by itself for ornamental and decorative purposes, including on products for sale, as long as the mark under which the products are sold (e.g. a title and logo of an online storefront) is not WUG LIFE or THIS IS A WUG & Design.

Where can I get a high quality image of the wug for my own linguistic meme making?

**We've released a high resolution redrawn reproduction of the 1958 wug as an .svg file with a transparent background as a CC0 work,**

**which means that it is in the public domain and free of any copyright restrictions; it can be easily resized and filled in with various colours and designs.**

The original 1958 wugs are in the public domain. We encourage anyone who uses this image or who creates their own art featuring the wug to acknowledge Jean Berko Glason's [*sic*] 1958 paper as the original source of the wug.

…………..

Are there only wugs?

Jean Berko Gleason's 1958 publication also mentions gutches, luns, tors and a whole group of whimsical creatures. The paper also mentions people who gling, rick and spow. Illustrations of these do not appear in the original 1958 publication, but are available in the 2006 book. Only the wug is illustrated in the 1958 paper. Because these characters do not appear as images in the 1958 paper their copyright status is less clear. We apologize to fans of luns everywhere.

**Where can I see more wug stuff?**

**Check out the 'wug' tag on All Things Linguistic for wug crafts, art, baked goods, and memes.**

**Where can I buy wug stuff?**

**Some places you can buy wug-inspired merch include:**

**The Lingthusiasm merch store on RedBubble**

**Jean Berko Gleason's Original WUG Store**

I have made art with wugs, will you share it?

Yes! Just tag Lingthusiasm on social media to be added to the "wug" tag on All Things Linguistic.

If you sell wug merch let us know and we'll add it to the list of wug stores above!

**Why is this FAQ so long and detailed?**

**There are many linguistic stimuli which have been created for experiments; the reason why people like doodling, drawing, creating memes of, wearing, and otherwise reproducing the wug in particular is because of all of the other members of the linguistic community who have done so over the decades, not just a single paper written in 1958. For this reason, we think that it is useful for the community to know that they're entitled to continue doing so. We look forward to seeing further examples of your wug creativity!**

*Id.* (emphasis supplied)*.*

73.     Shortly after Lingthusiasm published its manifesto and defense of its use of Berko

        Gleason's intellectual property, numerous other third party sites began offering WUG

merchandise for sale for profit causing Berko Gleason to expend additional resources to have such posts taken down.

74. Moreover, linguistics bloggers published excerpts of the private correspondence between the parties' counsel, which posts attacked Berko Gleason as "litigious" [apart from the instant lawsuit, she has never sued a single person], mean-spirited, and motivated by greed.

75. Additionally, in or around August and September 2020, anonymous third parties began making editorial changes to articles about Berko Gleason and the WUG on sites such as Wikipedia in an apparent attempt to change the narrative about what Berko Gleason had originally published and when.

76. Prior to the onset of the dispute with Lingthusiasm in August 2020, there is no record of anyone attempting to edit the public record about Berko Gleason or the WUG in such a manner.

77. During the same time period as the one referred to in the preceding paragraphs, persons who, upon information and belief, are friends and allies of the defendants, attacked Berko Gleason's reputation and that of some of her colleagues on Twitter and other social media sites, alleging that Berko Gleason was using her supposed clout and superior resources to intimidate "junior linguists" such as the Defendants.

78. While Berko Gleason issued her own statement on her Twitter account, it was content neutral and did not attack Lingthusiasm.

79. On September 15, 2020, Berko Gleason, through counsel, issued take down notices to Redbubble.com demanding that redbubble.com remove content featuring products

offered for sale by Lingthusiasm which Berko Gleason has asserted infringed her trademarks and copyright.

80.    Accordingly, on September 16, 2020, Redbubble.com removed the Defendants' listing and provided notice to the defendants regarding the same.

81.    On October 27, 2020, Lingthusiasm delivered a counter-notification to Redbubble.com, pursuant to 17 U.S.C. § 512(g), contesting the removal of Lingthusiasm's version of WUG-related content.

82.    Lingthusiasm continues to ignore Berko Gleason's demand to remove material that infringes Berko Gleason's copyright and trademark rights from Lingthusiam's own website.

83.    Upon information and belief, the Defendants began promoting and distributing "Merch with WUGs," bearing infringing trademarks and copyright, owned and created by Berko Gleason only subsequent to the date of Berko Gleason's second cease and letter dated July 24, 2020.

84.    Upon information and belief, Lingthusiasm's actions set forth in preceding paragraphs are intended to obtain commercial benefits from such unauthorized use of Berko Gleason's trademarks and copyrights and/or to reap the benefits of Berko Gleason's goodwill and reputation.

85.    At no time did Berko Gleason assign her rights in her trademarks and copyrighted material to the Defendants.

86.    At no time did Berko Gleason license the use of, or otherwise give permission to the Defendants to use her trademarks and copyrighted material.

87.     At no time did Berko Gleason grant permission, express or implied, to the Defendants to copy Berko Gleason's copyrighted WUG Test and/or WUG Trademarks on Lingthusiam's website or anyplace else.

88.     Many of the images and/or text that the Lingthusiasm posted on its website are either identical to the WUG Test and/or WUG Trademarks or are copies of or facsimiles of the WUG Test and/or WUG Trademarks.

89.     The Defendants' use of the WUG Test and/or WUG Trademarks has, at all material times to the facts set forth herein, been unauthorized.

90.     At no time did Berko Gleason grant permission, express or implied, to the defendants to use a mark confusingly similar to WUG Test and/or WUG Trademarks including but not limited to "This is a WUG."

91.     At no time did Berko Gleason, expressly or impliedly, give permission to the Defendants or anyone else for the use of the WUG Test and/or WUG Trademarks by the Defendants.

92.     Upon information and belief, the Defendants derive substantial revenue and other benefits from the products sold, as well as the Internet traffic attracted to the Lingthusiasm website by Lingthusiasm's use and publication of Berko Gleason's intellectual property.

93.     At all times material hereto, Berko Gleason has prominently displayed copyright and trademark notices in the WUG Test and/or WUG Trademarks on her website as well as on third-party sites.

## Count I

**(Copyright Infringement, Violation of § 501 of the Copyright Act, 17 U.S.C. § 501)**

94.  Berko Gleason restates, realleges, and incorporates herein by reference all previous paragraphs of this Verified Complaint.

95.  The WUG Test constitutes copyrightable subject-matter under the copyright laws, pursuant to 17 U.S.C. § 102(a)(2).

96.  The WUG Test is registered with the United States Copyright Office.

97.  Berko Gleason is entitled to enjoys exclusive rights with respect to the WUG Test, a copyrighted work, including the exclusive right to reproduce, publish, distribute, display, and create derivative works.

98.  The Defendants have not obtained Berko Gleason's authorization or permission to reproduce, publish, distribute, display, or create derivative works of the WUG Test or any part thereof.

99.  The Defendants have reproduced, published, distributed, displayed and created derivative works based on the WUG Test.

100.  The Defendants use the WUG Test in their podcasts available at Lingthusiam.com, in the manufacturing, promotion, marketing, sale and advertising of products containing the WUG test or parts thereof, without Berko Gleason's consent or license.

101.  The Defendants' infringing works are virtually identical and/or substantially similar to Berko Gleason's copyrighted work--- the WUG Test.

102.  The Defendants know or have reason to know that the WUG Test is protected by the Copyright Act.

103.   The Defendants do not have a valid license, consent or authorization from Berko Gleason to copy, publish, or distribute infringing copies of the WUG Test; the Defendants are not authorized to copy, publish, or distribute infringing copies of the WUG Test without Berko Gleason's consent.

104.   Pursuant to the Copyright Act, the Defendants actions constitute copyright infringement.

105.   The defendants' conduct constitutes direct infringement of Berko Gleason's exclusive rights under the Copyright Act to use, display, reproduce or make derivative copies of Berko Gleason's WUG Test.

106.   The Defendants' acts of infringement have, at all material time hereto, been willful, intentional and/or purposeful, in disregard of, and indifferent to, the rights of Berko Gleason.

107.   As a direct and proximate result of the defendants' willful infringement of Berko Gleason's copyrights and exclusive rights under the Copyright Act, Berko Gleason's has sustained damages including but not limited to loss of sales.

108.   The Defendants have been unjustly enriched by their wrongful use of Berko Gleason's WUG test.

109.   Despite repeated demands, the defendants have willfully failed and refused to cease and desist from their infringing activities.

110.   Berko Gleason is entitled to the maximum statutory damages pursuant to 17 U.S.C. §§ 504(a)(2) and 504(c).

111.   Alternatively, at Berko Gleason's election, pursuant to 17 U.S.C. §§ 504(a)(1) and 504(b), Berko Gleason is entitled to her actual damages plus the defendants' profits derived from said infringement.

112.  Berko Gleason is entitled to her costs, including reasonable attorney's fees, pursuant to 17 U.S.C. § 505.

113.  The Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause, Berko Gleason great and irreparable injury that cannot fully be compensated or measured in money.

114.  Berko Gleason has no adequate remedy at law.

115.  Pursuant to 17 U.S.C. § 502, Berko Gleason is also entitled to a permanent injunction requiring the defendants to employ reasonable methodologies to prevent or limit infringement of Berko Gleason's copyrights.

## **Count II**

### **Trademark Infringement against Defendants in Violation of 15 U.S. Code § 1117**

116.  Berko Gleason restates, realleges, and incorporates herein by reference all previous paragraphs of this Verified Complaint.

117.  The defendants, without the permission or consent of Berko Gleason, and without authority, have publicly displayed, and used for commercial purposes, marks that are identical or confusingly similar to Berko Gleason's registered and/or common law trademarks.

118.  The defendants have infringed Berko Gleason' trademarks intentionally, willfully, deliberately, in bad faith, causing economic and reputational harm to Berko Gleason.

119.  Despite demand, the defendants have willfully failed and refused to cease and desist from their infringing activities.

120. Pursuant to 15 U.S.C. § 1117, (a) Berko Gleason is entitled to recover (1) defendants' profits occasioned by such infringement, (2) any damages sustained by Berko Gleason as a result thereof, and (3) the costs of the instant action.

121. Pursuant to 15 U.S.C. § 1116, Berko Gleason is entitled to injunctive relief to enjoin any further infringement of her registered marks.

122. Pursuant to 15 U.S.C. § 1118, Berko Gleason is entitled to an order compelling the destruction of the infringing articles.

123. The defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Berko Gleason great and irreparable injury that cannot fully be compensated or measured in money.

**Count III**

**Palming Off**

124. Berko Gleason restates, realleges, and incorporates herein by reference all previous paragraphs of this Verified Complaint.

125. Massachusetts's common law protects trade dress and prevents third parties from using the same or a similar trade dress in order to mislead the public by "palming off" a plaintiff's goods.

126. As set forth more fully above, the defendants are using the same or a similar trade dress for its products which is leading to consumer confusion.

127. The Defendants have actually copied Berko Gleason's products containing the WUG Trademarks and have passed them off as their products, thereby diverting substantial profit from Berko Gleason.

128.   Defendants' actions described herein were performed willfully, knowingly and after being informed of the infringement set forth herein.

129.   Berko Gleason has been harmed by the conduct alleged herein and is entitled to be compensated for the damages sustained as provided by law, including lost royalties, dilution, harm to goodwill and reputation, lost profits, costs, interest and attorney's fees.

## Count IV

### Trademark Infringement, Unfair Competition, and False Designation of Origin Under the Lanham Act, 15 U.S. § 1125(a)

130.   Berko Gleason restates, realleges, and incorporates herein by reference all previous paragraphs of this Verified Complaint.

131.   The Defendants' unauthorized use of the WUG Trademarks constitutes use in commerce in violation of Dr. Jean Berko Gleason's trademarks; false designation of origin, sponsorship or approval; false or misleading description and representation of fact, causing confusion or mistake, deceiving as to connection, association or affiliation by and between the parties and their respective goods and services, or confusion or mistake as to the origin, sponsorship or approval by and between the parties and their respective goods and services.

132.   The Defendants have infringed Berko Gleason' trademarks intentionally, willfully, deliberately, in bad faith, causing economic and reputational harm to Berko Gleason.

133.   The Defendants' actions are intended to reap the benefits of Berko Gleason's goodwill and reputation.

134.   Despite repeated demands, the Defendants have willfully failed and refused to cease and desist from their infringing activities.

135.   The Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Berko Gleason great and irreparable injury that cannot fully be compensated or measured in money.

## Count V

### Common Law Trademark Infringement and Unfair Competition

136.   Berko Gleason restates, realleges, and incorporates herein by reference all previous paragraphs of this Verified Complaint.

137.   The Defendants' unauthorized use of Berko Gleason's trademarks is causing or is likely to cause confusion, mistake, and is deceiving consumers, including both current potential consumers, as to the source of the products.

138.   The Defendants' unauthorized use by the defendants of the Berko Gleason's trademarks constitutes, under the Commonwealth of Massachusetts, common law trademark infringement and unfair competition.

139.   The Defendants and Berko Gleason are competitors in the same business of designing, producing, selling and merchandizing products in the field of linguistic work and operate through the same online channels of trade, inter alia, Redbubble.com, in the United States and in the Commonwealth of Massachusetts.

140.   The Defendants have infringed Berko Gleason's trademarks intentionally, willfully, deliberately, in bad faith, causing economic and reputational harm to Berko Gleason.

141.   The Defendants' actions are intended to reap the benefits of Berko Gleason's goodwill and reputation.

142.   Despite repeated demands, the Defendants have willfully failed and refused to cease and desist from their infringing activities.

143.    The Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Berko Gleason great and irreparable injury that cannot fully be compensated or measured in money.

### Count VI

### Violation of M.G.L. ch. 93A § 11

144.    Berko Gleason restates, realleges, and incorporates herein by reference all previous paragraphs of this Verified Complaint.

145.    The actions and representations of the defendants complained of herein constitute unfair and deceptive business practices in violation of Massachusetts General Laws, chapter 93A § 11, and proscribed by the Massachusetts attorney general.

146.    The actions of the defendants complained of herein were knowing and willful violations of said M.G.L. c. 93A § 11.

147.    The acts and practices complained of herein occurred primarily and substantially in the Commonwealth of Massachusetts and/or were directed at commerce in Massachusetts and were intended to, and did, cause economic harm in Massachusetts.

148.    The aforesaid unfair acts and practices have caused Berko Gleason a loss of money and/or property, including but not limited to lost profits, attorneys' fees and other damages.

**PRAYERS FOR RELIEF**

WHEREFORE, Jean Berko Gleason prays that this Court enter the following

relief:

(a)      Pursuant to F.R. Civ. P. 65,  15 U.S.C. § 1116,  and 17 U.S.C. §§ 501-502 enter

one or more orders directed to each of the defendants, Gretchen McCulloch and Lauren Gawne

dba Lingthusiasm, their agents, officers, directors, employees, attorneys, affiliates, subsidiaries

and assigns, and those persons acting in concert with, or at the direction of, said defendants who

have received notice of the order by personal service or otherwise, enjoining and restraining

them forthwith: (1) from making any use whatsoever of Dr. Jean Berko Gleason's copyrighted

WUG Test or any parts thereof or Dr. Jean Berko Gleason's trademarks; (2) directing the said

defendants, Gretchen McCulloch and Lauren Gawne, to remove all Internet posts and public

displays of Dr. Jean Berko Gleason's copyrighted WUG Test and WUG Trademarks from all

Defendants-owned, authorized and controlled websites and each and every other place or

medium where the defendants have displayed or are displaying the said WUG Test, WUG

Trademarks or otherwise using the said WUG Test or WUG Trademarks for commercial

purposes; (3) directing the said defendants, Gretchen McCulloch and Lauren Gawne, to cease

and desist forthwith from advertising for sale, holding themselves out as purveyors of, or

otherwise claiming any right, title, or interest in Dr. Jean Berko Gleason's copyrights or

trademarks;

(b)      Pursuant to F.R. Civ. P. 65, 17 U.S.C. § 504, and 15 U.S.C. §1117 enter one or

more orders directed to each of the defendants, Gretchen McCulloch and Lauren Gawne, their

agents, officers, directors, employees, attorneys, affiliates, subsidiaries and assigns, and those

persons acting in concert with, or at the direction of, said defendants, directing them to account

forthwith to Dr. Jean Berko Gleason for: (1) all uses that they have made of Dr. Jean Berko

Gleason's copyrighted WUG Test and WUG Trademarks; (2) all revenue that they have

generated from the commercial use of Dr. Jean Berko Gleason's copyrighted WUG Test and

WUG Trademarks;

(c)     Enter one or more orders directed to each of the defendants, Gretchen McCulloch

and Lauren Gawne, their agents, officers, directors, employees, attorneys, affiliates, subsidiaries

and assigns, directing them to disgorge to Dr. Jean Berko Gleason forthwith the profits identified

in the accounting order in subpart b, above;

(d)     Order, pursuant to 17 U.S.C. § 503(b), that the Defendants effectuate the

destruction of all unauthorized copies of Dr. Jean Berko Gleason's copyrighted work in their

possession, custody, or control;

(e)     Order, pursuant to 15 U.S.C. § 1118, that the Defendants effectuate the

destruction of all infringing articles bearing Dr. Jean Berko Gleason's trademarks heretofore

made and/or used by the Defendants;

(f)     Enter judgment for Dr. Jean Berko Gleason and against each of the defendants,

Gretchen McCulloch and Lauren Gawne, jointly and severally, pursuant to Counts III, IV, and V,

in an amount to be determined by this Court;

(g)     Pursuant to 17 U.S.C. § 504(b) and 15 U.S.C. § 1117, award actual damages to

Dr. Jean Berko Gleason and against each of Defendants, Gretchen McCulloch and Lauren

Gawne, jointly and severally, plus said defendants' profits from infringement as will be proven at

trial;

(h)      Alternatively, pursuant to 17 U.S.C. § 504(c) and 15 U.S.C. § 1117, award statutory damages to Dr. Jean Berko Gleason and against each of the defendants, Gretchen McCulloch and Lauren Gawne, jointly and severally;

(i)      Enter judgment for Dr. Jean Berko Gleason, and against each of the defendants, Gretchen McCulloch and Lauren Gawne, jointly and severally, pursuant to Count VI in an amount to be determined by this Court, plus three times Dr. Jean Berko Gleason's actual damages if the Court finds a knowing and willful violation of M.G.L. c. 93A, plus reasonable attorneys' fees, costs, and  interest;

(j)      Treble the award of damages awarded to Dr. Jean Berko Gleason pursuant to 17 U.S.C. § 505 and 15 U.S. Code § 1117 if the Court finds a willful infringement;

(k)      Award Dr. Jean Berko Gleason reasonable attorneys' fees, costs, and interest pursuant to 17 U.S.C. § 505, 15 U.S.C. § 1117, and M.G.L. c. 93A, and;

(l)      Enter such other further relief as this Court deems equitable and just.

### **JURY DEMAND**

Plaintiff demands a trial by jury on all counts so triable.

JEAN BERKO GLEASON

By her Attorney,

*/s/Seth H. Salinger*
_____
Seth H. Salinger (BBO #555426)
53 Langley Road, Suite 270
Newton, MA  02459
Tel:  (617)-244-7630
Fax: (877)-222-3572
sethsal@gmail.com
www.sethsalinger.com

Dated: November 9, 2020

32

## VERIFICATION

I, Dr. Jean Berko Gleason, the plaintiff herein, hereby certify that I have read the foregoing Complaint, that the facts contained therein, as they pertain to me or my participation, are true, and that, I have made a reasonable and diligent investigation to confirm the validity of so much of the facts as are alleged upon information and belief, and after such investigation, I believe them to be true.

Signed under the pains and penalties of perjury this 6th day of November 2020.


Jean Berko Gleason
Jean Berko Gleason